586 A.2d 783

**Joy D. FISHER**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, et al.**

**No. 734, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 4, 1991.

Lois Karp (Law Office of Eugene I. Glazer, on the brief), Baltimore, for appellant.

Robert L. Ferguson, Jr. (Thieblot, Ryan, Martin & Ferguson, on the brief) Baltimore, for appellees.

Argued before MOYLAN, ALPERT and CATHELL, JJ.

CATHELL, Judge.

Joy D. Fisher, the appellant, appeals from the granting of a summary judgment in favor of appellees by the Circuit Court for Anne Arundel County (Williams, J.). Fisher alleges that:

I. The circuit court improperly granted Hardin–Kight and USF & G's motion for summary judgment because it failed to distinguish the significance of the unique language in this insurance policy's omnibus clause.

A. Hardin–Kight's pattern and practice of allowing its employees personal use of company vehicles created a material dispute of fact, thereby precluding summary judgment as to the meaning of the term "permission" as used in the omnibus clause of USF & G's insurance policy.

B. As a matter of law, the circuit court erred in its failure to distinguish the omnibus clause of Hardin–Kight's insurance policy with USF & G from that of the "standard" automobile insurance policy.

II. Hardin–Kight's internal corporate decision to restrict the personal use of its company vehicles was irrelevant and immaterial to a determination that USF & G must defend Peglow. The insurance carrier voluntarily assumed the potential risk of loss when it contracted to insure a fleet of vehicles under a policy which contained the distinct omnibus clause at issue.

III. The lower court improperly granted the motion for summary judgment thereby denying Joy Fisher her right to have a jury, as trier of fact, construe the meaning of "permission" as set forth in the omnibus clause of USF & G's insurance policy.

Finding no error in the trial court's granting of summary judgment, we shall affirm. We shall address only those facts necessary to our determination of the issues.

An employee of Hardin–Kight's had permission to drive a company vehicle home and to use it in the company's business. While at home, the employee (Peglow) responded to a personal emergency unrelated to his employer's business, and enroute, using the employer's vehicle, caused the accident that resulted in the injuries to Fisher. The company maintained a business vehicle policy with United States Fidelity & Guaranty Company (USF & G).

Fisher organizes her brief into three issues with two subparagraphs, but there is really only one issue: whether the use by Peglow was permitted.

The key to determinating the correctness of the trial court's ruling is the construction to be afforded the "omnibus" clause in the policy at issue. The clause provides in pertinent part:

**A. COVERAGE**

* * * * * *

**1. WHO IS AN INSURED**

* * * * * *

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow....

The operative words of the clause at issue are "while using with your permission." USF & G contended below, and contends here, that the language provides coverage only when the vehicle is being used within the scope of the permission granted to the employee. Fisher apparently contends that as long as the employee had permission to take the vehicle home, the language of the coverage is not sufficiently specific to limit the employees' use to the conditions imposed by the employer. She also argues that the conditions laid down for permitted use were waived. We must first address the limitations of our construction of the policy language at issue.

Construction

The Court of Appeals in *National Grange Mutual Insurance Company v. Pinkney*, 284 Md. 694, 706, 399 A.2d 877 (1979), opined:

> We point out that Maryland differs from some of the states ... which have adopted the "liberal" rule since there an insurance policy is to be most strongly construed against the insurer, which is not the rule in Maryland. Moreover as was pointed out in *Weissberg Corp. v. N.Y. UW Insur.*, 260 Md. 417, 429, 272 A.2d 366 (1971), citing *Offutt v. Liberty Mut. Ins. Co.*, 251 Md. 262, 270, 247 A.2d 272 (1968), we may not make a new contract under guise of construction.

■ The liberal rule is also defined as the initial permission rule, which provides that:

> [I]f the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated....

*National Grange,* 284 Md. at 698, 399 A.2d 877 (citing 6C J.A. Appleman and J. Appleman, *Insurance Law and Practice* § 4367 (Buckley ed. 1979)).

We find nothing in the enactments of the General Assembly relative to insurance to indicate that we are expected as a matter of public policy to follow the so-called "liberal" rule relative to interpretation of omnibus clauses. We find no mandate which obliges us to depart from either our prior opinions on the subject of omnibus clauses or the prior authorities in this State relative to the interpretation of insurance contracts. It should be specifically noted that although the clause in the contract now before the Court is similar to that before us in *Insurance Co. of N. Amer. v. State Farm, supra,* 281 Md. 381 [378 A.2d 1344 (1977)]; *Goodwin v. Home Indemnity Co., supra,* 255 Md. 364 [258 A.2d 220 (1969)]; and *Cohen v. Am. Home Assurance Co., supra,* 255 Md. 334 [258 A.2d 225 (1969)], it is not identical to *all* of the omnibus clauses which have appeared in cases before us. We note specifically that all omnibus clauses do not contain the same language. Because these clauses are part of contracts, it follows that they must be interpreted pursuant to their terms on a contract by contract or case by case basis, and not by sweeping language saying that regardless of the exact provisions of the contract we shall interpret all similar, but not identical, contracts alike.

*Id.,* 284 Md. at 706, 399 A.2d 877 (emphasis in original). We thus hold that in Maryland, the "liberal" (or "initial permission" or the "hell or high water") rule has been, and

remains, specifically rejected. *See also Jennings v. Government Employees Insurance Company*, 302 Md. 352, 360, 488 A.2d 166 (1985).

■ Additionally, it is clear that the Maryland law does not prohibit such omnibus clauses for public policy reasons. We said recently in *Globe American Casualty Co. v. Chung*, 76 Md.App. 524, 532, 547 A.2d 654 (1988), that: "Insurance policies are contractual and the court interprets the provisions of the policy based on their plain meaning." (Citation omitted.) *See also Nat'l Indem. Co. v. Continental Ins. Co.*, 61 Md.App. 575, 487 A.2d 1191 (1985).

■ The Court of Appeals in *Winterwerp v. Allstate Ins. Co.*, 277 Md. 714, 357 A.2d 350 (1976), was called upon to construe a non-owned automobile clause in an insurance policy. The Court held:

> We noted there that absent an ambiguity, Maryland has not adopted the rule followed in many jurisdictions that an insurance policy is to be most strongly construed against the insurer. *See also Ebert v. Millers Fire Ins. Co.*, 220 Md. 602, 611, 155 A.2d 484 (1959). In *Humphrey*, [1] we also applied the rule that where the facts pertinent to the question of coverage are undisputed, the issue is one of construction in light of the language employed in the contract, the subject matter and the surrounding circumstances.
>
> Here, then, since the facts are undisputed, construction of the clause presents a question of law for the court. Further we are not persuaded that the disputed language is ambiguous, since we find the clause neither uncertain in its general meaning nor subject to construction in alternate ways. As Judge Oppenheimer aptly stated for the Court in *Humphrey*, the fact "[t]hat a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous." In light of our conclusion that the language in

---

1. *Allstate Ins. Co. v. Humphrey*, 246 Md. 492, 229 A.2d 70 (1967).

controversy is not ambiguous, there is no basis for construing it strictly against the insurer.

*Id.* 277 Md. at 717–18, 357 A.2d 350 (citations omitted). We hold that the language in Hardin–Kight's policy is unambiguous. We now address the meaning of that unambiguous clause.

A similar factual situation existed in our case of *Washington Metro. Area Transit Auth. v. Bullock,* 68 Md.App. 20, 509 A.2d 1217, *cert. denied,* 308 Md. 237, 517 A.2d 1120 (1986). In that case an employee of the Transit Authority (WMATA) had permission to use the company vehicle for specific company purposes. Contrary to the permission granted, he utilized the vehicle for personal reasons and struck pedestrians. In a declaratory judgment action WMATA, who was self-insured, alleged that because Bullock was using the vehicle for personal reasons, his use was non-permissive, and therefore, WMATA was not responsible for his conduct. Bullock and the pedestrians denied that Bullock's use was nonpermissive and also alleged that because of waiver, laches, and estoppel, WMATA was precluded from denying that Bullock had permission. Like the case *sub judice,* the employee in *WMATA* conceded that he was on a personal errand and was not acting within the scope of his employment at the time of the accident. Originally, adjusters had been permitted to use company cars for personal business as a part of their compensation. As a result of disputes arising out of changes in the company policy as to furnishing of company vehicles, a policy was agreed to amongst the adjusters and the company. Under this accepted policy the adjusters agreed "not to use the WMATA vehicle assigned to each of them for personal use." *Bullock,* 68 Md.App. at 26, 509 A.2d 1217.

Bullock knew of the agreement, never denied it, and never complained about it. Like the instant case, there was some evidence that the personal use restriction was not strictly adhered to.

Judge Wilner stated for this Court:

To this point, it has not been regarded as against public policy in this State for an insurer to disclaim or deny coverage when an insured vehicle is being used by someone other than the "named insured" without the permission or beyond the scope of the permission of the "named insured." As the Court pointed out in *National Grange Mut. Ins. v. Pinkney,* 284 Md. 694, 399 A.2d 877 (1979), coverage of persons other than the named insured (or members of his household) arises only from what is generally referred to as an "omnibus clause" in an insurance policy, and "there is no provision in any Maryland statute to which we have been referred, or which we have found in our research, which requires an omnibus clause to appear in any motor vehicle liability insurance policy." *Id.,* at 704–05, 399 A.2d 877.

*Bullock,* 68 Md.App. at 30, 509 A.2d 1217 (footnote omitted). In our discussion of *National Grange,* we discussed the Court of Appeals' opinion, saying:

The *National Grange* Court observed that the Court had previously rejected the "liberal" rule and saw no public policy reason to change that view. In the end, it took an almost unique approach, rejecting all three rules and opting instead to construe, on a case-by-case basis, the particular wording of the omnibus clause at issue. . . .

*Bullock,* 68 Md.App. at 32, 509 A.2d 1217. We held in *Bullock* at 36, 509 A.2d 1217:

It follows that (1) an insurer, including a self-insurer, may exclude coverage for non-permissive use, (2) an employer, as the owner of the vehicle and the named insured, as self-insurer or under a policy, may permit an employee to use the vehicle generally but expressly forbid him from using it for personal errands, and (3) if, in violation of that limitation, the employee indeed uses the vehicle for a personal errand, the use may be regarded as non-permissive, thereby excluding it from coverage under a standard-type of omnibus clause.

We also addressed in *Bullock* at 36, 509 A.2d 1217 the employee's assertion that he had "some sort of 'implied'

permission to use the car for personal errands ... based on ... 'long continued non-enforcement' of the restriction...." We said:

> The fact that some of the adjustors ... use the vehicles ... for other, more clearly personal uses, does not render the company policy void or ineffective.... We thus have uncontroverted evidence of a clear company policy forbidding personal use, and, as noted in *Bond v. Pennsylvania Nat'l Mut.*, 289 Md. 379, 385, 424 A.2d 765 (1981) "you cannot imply something in the face of an express statement to the contrary." *Id.* 68 Md.App. at 38, 509 A.2d 1217.

In *Bullock*, we were, in part, relying on the Court of Appeals' decision in *National Grange*. The policy at issue in *National Grange* concerned an omnibus permission clause somewhat different from the clause in the instant USF & G policy; it added the clause "provided his actual operation [was] within the scope of such permission...." *Bullock*, 68 Md.App. at 31, 509 A.2d 1217 (bracket in original). Appellant argues in the instant case that the omission of this qualifying language in the USF & G policy somehow negates the primary coverage language "while using with your permission." In other words, Fisher contends that the absence of the extra qualifying language removes the personal use from the restrictions placed upon it by the employer. Fisher also argues that the absence of that qualifying language makes the clause ambiguous, and that the resulting ambiguity was for the trier of fact to determine and thus was a jury question. As we have said, we disagree with her contention. The language in the policy at issue is not ambiguous. The Court of Appeals in *Bond v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 289 Md. 379, 384, 424 A.2d 765 (1981), stated: "Insurance policies, being contractual, are construed as other contracts." (Citation omitted.) *See National Grange*, 284 Md. at 694, 399 A.2d 877. The clause in the business policy at issue provides coverage for an employee "while using with your permission a covered 'auto.'" It means what it says. If

the employee was using the automobile within the scope of the permission, that is, with actual permission, coverage is afforded; otherwise, it is not. As we perceive it, "within the scope of the permission" and "with actual permission" are but other forms of saying "with permission." The words "with permission" include the alleged qualifiers urged on us by appellant. The absence of the qualifiers, as we see it, does not expand coverage, nor does it make unambiguous language ambiguous. Our examination of the meaning of the words used in the policy, as compared with the language appellant asserts should be included, leads us to the same conclusion—if the words "actual permission," "actual use," "within the scope," etc., were included, they would be duplicative, not expansive nor limiting.

## Definitions

*The Random House Dictionary of the English Language* 1573–74 (unabridged ed. 1983) defines "use" as: "[T]o employ for some purpose; put into service ... to avail oneself of; apply to one's own purposes ... the act of ... putting into service...." *Black's Law Dictionary* 1541 (6th ed. 1990), states the legal definition of "use," as a noun, as: "That enjoyment of property which consists in its employment, occupation, exercise or practice." That dictionary defines "permission" as "the act of permitting; formal or express allowance or consent.... liberty or license granted to do something."

*Black's Law Dictionary* 1541 (6th ed. 1990), defines "use," as a verb, as: "To make use of; to convert to one's service; to employ; to avail oneself of; to utilize...." It defines "permission" as a "license to do a thing; an authority to do an act which, without such authority, would have been unlawful. An act of permitting, formal consent, authorization, leave, license or liberty granted...." *Id.* at 1140.

Appellant appears to argue that the term "permission," as used in the policy, was meant to authorize or allow the

use by the employee of the vehicle for *any* purpose. We disagree as to that interpretation. *A Dictionary of Modern Legal Usage* (Garner ed. 1987) contains perhaps the most precise definition of the distinction between permission and allowance. It states: *"Allow* suggests merely the absence of opposition, or refraining from an absolute proscription. *Permit,* in contrast, suggests affirmative sanction or approval." *Id.* at 35 (emphasis in original). The policy language at issue does not afford coverage when the employee is *allowed* to use the vehicle, but does when he is *permitted* to do so. To adopt appellant's interpretation would be to change the meaning of the language used from that intended to that not intended.

In the case of *Nationwide Gen. Ins. Co. v. Gov't Employees Ins. Co.,* 81 Md.App. 104, 566 A.2d 1117 (1989), we said, quoting from the New Jersey case of *Indemnity Ins. Co. v. Metro. Casualty Ins. Co.,* 33 N.J. 507, 166 A.2d 355, 358 (1960):

> Nationwide insists that the "actual use" of the car was within the scope of the permitted purpose....

> The *Melvin* Court opined that there was "no reason to limit the meaning of the words 'actual use' to the operation of a vehicle." *Melvin* [*v. American Automobile Ins. Co.*], 232 Md. [476] at 478, 194 A.2d 269 [ (1963) ]. Further, the Court of Appeals observed that many cases from other jurisdictions indicate that the actual use of a vehicle is "the particular use contemplated when permission is granted and relied upon." ... [I]t is clear that this definition is controlling in Maryland.

> \* \* \* \* \* \*

> The word "use" and the phrase "actual use" do not appear to be vastly different, though we have indicated that in Maryland "actual use" begs consideration of the owner's intent.

*Id.* 81 Md.App. at 120–22, 566 A.2d 1117 (citations omitted). *See also Bond v. Pennsylvania Nat'l Mut. Casualty Ins.*

*Co.,* 289 Md. 379, 424 A.2d 765 (1981), and *Federal Ins. Co. v. Allstate Ins. Co.,* 275 Md. 460, 341 A.2d 399 (1975).

We fail to see where the absence of a similar phrase in the case at bar modifies or changes the clear meaning of the omnibus language of the policy in the instant case. The parties have virtually conceded that the use to which the vehicle was being put at the time of the accident exceeded the scope of the permission granted by the employer.

The lack of distinction between the words "use" and "actual use" was commented on in *Maryland Indem. Ins. Co. v. Kornke,* 21 Md.App. 178, 319 A.2d 603 (1974), where we said:

> The so-called "omnibus clause," required by statute in a number of states, is in addition to the general insuring clause and extends the protection of the automobile liability insurance policy to any person using the insured vehicle provided the use (or "actual use") is by the named insured or with his permission or consent. The clause, irrespective of language variations, clothes the named insured with broad authority to constitute other persons as "additional insureds."

*Id.* at 180, 319 A.2d 603 (footnotes omitted).

We then, in a footnote, opined:

> "... [I]t appears that the courts ordinarily have not regarded that term, as distinguished from the word 'use,' as being one of special significance." Annotation: "Omnibus Clause of Automobile Liability Policy as Covering Accidents Caused by Third Person Who is Using Car With Consent of Permittee of Named Insured." A.L. R.3d, pp. 10–133, at 29. *See also Maryland Casualty Co. v. Marshbank,* 226 F.2d 637 (3rd Cir.1955).

*Id.* 21 Md.App. at 180, n. 4, 319 A.2d 603. *See Goodwin v. Home Indem. Co.,* 255 Md. 364, 258 A.2d 220 (1969), *Hardware Mut. Casualty v. Mitnick,* 180 Md. 604, 26 A.2d 393 (1942).

The Court in *Hardware,* 180 Md. at 605, 26 A.2d 393, interpreted several clauses. One was "provided further

that the actual use is with the permission of the named insured." In its construction, the Court gave no significance to the language "actual use" but emphasized the "with the permission" portions, saying: "Here 'any person while using the automobile * * * with the permission of the named insured' is expressly included as the insured; the effect of the words seems unescapable [sic]...." *Id.* at 607, 26 A.2d 393.

To adopt the meaning of "using with your permission" claimed by appellant in the case at bar would be to adopt a meaning 180 degrees removed from the meaning ascribed to it by the insurer and the policy holder. To find that the absence of additional policy language negates the broad, general language of the policy, would be to hold that clear, unambiguous, understandable general language is ambiguous because it is not further defined. Such is not the law, nor should it be. Additionally, the employee conceded that he had no problem understanding the scope of his permitted use. He understood it to be limited to business use and it was expressly clear to him that the company's permission policy precluded him from using the vehicle as he did.

### Construction by the Jury

Appellants argue that the duty of determining the construction of the omnibus clause in the instant case was a jury function. The Court of Appeals, in its recent case of *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 556 A.2d 1135 (1989), was faced with deciding whether or not hemophilia was a "disease" within the meaning of a policy exclusion. Cheney argued that it was not. That Court first discussed the applicable rules of construction, stating in part:

> In the interpretation of the meaning of an insurance contract, we accord a word its usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense.

*Id.* at 766, 556 A.2d 1135 (citations omitted).

The Court concluded:

As this Court pointed out in *Truck Ins. Exch. v. Marks Rentals,* 288 Md. 428, 433, 418 A.2d 1187 (1980), language which is merely general in nature or imprecisely defined is not necessarily ambiguous. We do not find the word "disease" to be ambiguous in the context of this case. For this reason, and because there is no dispute of fact here, we conclude that interpretation is properly the function of the court rather than the jury.

*Id.* at 770, 556 A.2d 1135 (citation omitted).

We also discussed the use of general language in *Walker v. Fireman's Fund Ins. Co.,* 66 Md.App. 687, 505 A.2d 884 (1986), where Judge Garrity stated:

The appellants contend that the phrase "aircraft chartered with crew" is so vague and ambiguous that the question of whether there was coverage under the policy should have been decided by a jury. To enable us to answer this question we must first review the principles applicable to the construction of an insurance contract. Recently the Court of Appeals decided *Pacific Indemnity Company v. Interstate Fire and Casualty Company,* 302 Md. 383, 488 A.2d 486 (1985) in which a few well-established principles were again considered.

* * * * * *

The court, as it did in the case *sub judice,* may construe unambiguous insurance provisions as a matter of law. Additionally, we must be mindful that language is not ambiguous simply because it is general in nature or undefined by the policy. In fact, ambiguity arises only if the language is reasonably susceptible to more than one meaning by a reasonably prudent layperson.

*Id.* 66 Md.App. at 691–92, 505 A.2d 884 (citation omitted). We then relied on various *Webster's Dictionary* definitions of "charter," "with," and "crew" and held that reasonably prudent laypersons would clearly understand that they were entering into a "transportation arrangement by which both the plane and the crew are supplied together." *Id.* at 693, 505 A.2d 884.

In *Lowenthal v. Sec. Ins. Co.*, 50 Md.App. 112, 436 A.2d 493 (1981), we were faced with the granting of summary judgment, where the construction of the language of a policy was at issue:

> On the issues properly before us, there is no factual dispute disclosed by the pleadings and affidavits. Rather, the parties disagree on what label should be attached to the facts. There being no dispute as to fact, Security's liability under the policy turns on the construction of the policy exclusions; this presents a question of law for the court.

*Id.* at 117, 436 A.2d 493. The Court said in *Allstate Ins. Co. v. Humphrey*, 246 Md. 492, 496, 229 A.2d 70 (1967): "That a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous.... '... When these are clear, it is the province of the court, rather than of the jury, to construe the contract.' 220 Md. at 610, 155 A.2d 484. See also *Keyworth v. Industrial Sales Co.*, 241 Md. 453, 458, 217 A.2d 253 (1966)."

Thus, we hold that any reasonably prudent layperson would understand the policy language at issue in the case at bar to mean that the vehicle was insured when used by an employee within the scope of the permission granted to that employee. Mr. Peglow, the employee, so understood it. We can perceive of no other reasonable interpretation of the clause.

■ Even in a trial context as opposed to a summary judgment context, where contract language is ambiguous, construction *may*, under some circumstances, lie within the province of the court. Where there is "no dispute as to the facts which are pertinent to the question of coverage, which are shown by evidence properly admissible, construction is for the court." *Ebert*, 220 Md. at 610, 155 A.2d 484. *See Winterwerp v. Allstate Ins. Co.*, 277 Md. 714, 717, 357 A.2d 350 (1976); *Humphrey*, 246 Md. at 496, 229 A.2d 70. *Truck*

*Ins. Exch. v. Marks Rentals, Inc.,* 288 Md. 428, 433, 418 A.2d 1187 (1980).

In the case at bar, there is no dispute as to the actual coverage language in the policy. We have determined that it was not ambiguous. Its construction, therefore, was for the court, not the jury. The trial court did not err in refusing to present the issue to the jury.

## Waiver

■ Fisher argues that the employer waived its policy against personal use of company vehicles by permitting such use in the past, but the record does not factually support her contention. It is undisputed that Hardin–Kight Associates, Inc., had a policy manual that limited the use of company vehicles to company business. That manual was made available to employees. There was evidence that Peglow was informed of the policy. Peglow admitted that he had been so informed. On one prior occasion, Peglow had been caught using the company vehicle for personal use. He admitted to having been, at that time, warned again against using the vehicle for personal use and admitted being told that if he did so again, he would be fired.[2] Peglow conceded that he had no express permission to use the vehicle on the night in question. He admitted not asking for express permission, and said that he thought his employer "would object" if he asked.

There was ample evidence of continuing efforts by the company to enforce this policy in respect to its employees. The only personal use exceptions were those expressly requested and approved in advance. That was rarely done. It is thus clear that no general waiver of the company's policy had ever been granted to anyone, including Peglow. See our discussion in *Bullock, supra.*

---

**2.** After the accident, he was fired.

The Change in Language of the Omnibus Clause

 Appellants attach significance to what they assert was a change by appellee in the language of its omnibus clause, asserting that the change somehow enlarges the permitted scope of use to a general allowance of personal use. Assuming, arguendo, that a change in policy language was made, we would afford no special significance to the change which would alter the plain meaning of the subsequent policy language beyond its regular and ordinary meaning.

One of the clauses at issue in *Gen. Accident Fire & Life Assurance Corp. v. Perry*, 75 Md.App. 503, 541 A.2d 1340 (1988), provided:

EXCLUSIONS

A. We do not provide Liability Coverage for any person:

\* \* \* \* \* \*

8. Using a vehicle without a reasonable belief that that person is entitled to do so....

*Id.* at 507, 541 A.2d 1340. The car was being driven by an unlicensed driver at the time of the accident. The driver did have the owner's permission to drive the vehicle "to go to work or to go to a local store." In addition to being unlicensed he was, at the time of the accident, driving outside the scope of the permission granted him to drive. We opined:

Here, the insurance policy provides general coverage in one part and groups the exclusions, including the "reasonable belief" exclusion, in another part. *This type of provision apparently replaces the traditional "omnibus" clause wherein the language of the policy provided for coverage where the use of the vehicle was with the permission or consent of the named insured.*

*Id.* at 509, 541 A.2d 1340 (emphasis added). In discussing several cases from foreign jurisdictions construing "reasonable belief" modification of omnibus clauses, we considered *United Pacific Ins. Co. v. Larsen*, 44 Wash.App. 529, 723

P.2d 8 (1986). Referring to the Washington appellate court's holding, we stated:

> This [Washington] court reasoned that the insurer's change in use from the omnibus clause to the clause at issue reflected a "[c]hange of policy language" which was "significant and binding on insurance companies." *Id.* (Citation omitted.) The court observed: "[g]iven [the insurer's] past policy language it is apparent they knew how to limit coverage to the scope of permission granted. That it employed different and less explicit language in the instant policy is evidence that it meant to convey a different meaning." *Id.*

> \* \* \* \* \* \*

> A better reasoned approach which we do find persuasive and which we adopt, is that which concludes that the exclusion is unambiguous. The court in *Georgia Farm Bureau [Mutual Ins. Co. v. Fire & Casualty Ins. Co.,* 180 Ga.App. 777], 350 S.E.2d [325] at 326 [ (1986) ], noted that the focus of the exclusion *sub judice,* as contrasted with the "omnibus clause", is on "the state of mind of the user," and *not* on permission. Under the "state of mind" approach, it is irrelevant whether the driver of the vehicle was actually "entitled" to drive because he had permission, consent, a license, a learner's permit, an ownership interest in the vehicle or some other color of authority. What is relevant, is whether the driver *believed* he was entitled to drive. *Allstate [Ins. Co. v. U.S. Fidelity and Guaranty Co.],* 663 F.Supp. [548] at 553–554 [ (W.D.Ark.1987) ]; *Nationwide Mutual [Ins. Co. v. Southern Trust Ins. Co.,* 174 Ga.App. 513,] 330 S.E.2d at 443 [ (1985) ]. This, we hold, is the clear and unambiguous meaning of the exclusion in the case *sub judice.*

*Perry,* 75 Md.App. at 520–21, 541 A.2d 1340 (emphasis in original). Thus, in *General Accident,* we afforded no significance to a change in policy language. We merely construed the language of the changed policy independent of

**340**

the language of prior policies. We do likewise in the case at bar.

We, therefore, answer the questions posed by appellant in the negative. We perceive no error by Judge Williams in his granting of summary judgment.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.